[No. 6913–0–II.   Division Two.   March 15, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY L. EKER, *Appellant.*

*Joseph M. Mano, Jr.,* for appellant (appointed counsel for appeal).

*James R. Miller, Prosecuting Attorney,* and *Nelson Hunt, Deputy,* for respondent.

WORSWICK, C.J.—Gary L. Eker appeals his conviction in Lewis County of rape in the first degree. RCW 9A.44-.040(1)(a).[1] He contends that the jury's answers to special verdict questions were inconsistent with each other and

---

[1] RCW 9A.44.040 provides:

"Rape in the first degree. (1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory:

"(a) Uses or threatens to use a deadly weapon or what appears to be a deadly weapon; . . ."

with the general verdict. He argues that these inconsistencies require a new trial. We affirm.

The victim, Ms. M., testified that on April 12, 1982, Eker picked her up as she was walking toward Interstate 5 along a Centralia street. Eker was driving a tractor–trailer moving van, and was accompanied by two friends, Robert A. Shemalewski and Sammy D. Wright. He offered Ms. M. a ride in return for some marijuana. She accepted the ride, as she intended to hitchhike to Chehalis anyway and thought she could get some marijuana from a friend there.

En route, Eker asked Ms. M. if she would like to exchange LSD for marijuana. She said yes. Eker thereupon pulled into a viewpoint parking area, stating that the LSD was in the trailer. Ms. M. and Shemalewski walked to the back of the trailer and Shemalewski climbed inside. He emerged with a pistol and ordered Ms. M. into the trailer. Once she was inside, the door was closed and she was raped in turn by Eker and Wright. Shemalewski stood guard outside.

Eker and Wright then returned to the cab, and Shemalewski got into the trailer with Ms. M. He no longer had the gun. Eker drove the van south out of Lewis County and ultimately into Oregon. Ms. M. testified that during the trip she was repeatedly assaulted and raped by the men until they arrived in Bend, Oregon, the next day. Ms. M. escaped while the truck was parked in Bend, and the men were quickly apprehended by Oregon police. When asked by police if any weapons were present, Eker showed them the pistol which was under the mattress in the sleeper portion of the cab. He admitted ownership of the gun. The three men were each charged with rape in the first degree and assault in the first degree,[2] and tried separately.

In each case the State relied on Shemalewski's display of the gun as a basis for enhanced penalties on the rape charge. RCW 9.95.040 limits the parole board's discretion in setting minimum terms in cases involving deadly weapons,

---

[2]Eker was acquitted of the assault charge.

and RCW 9.41.025 enhances the statutory penalties in crimes involving firearms.[3]

To invoke either statute, the State had to prove the enhancement facts beyond a reasonable doubt. *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980); *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972). Also, separate interrogatories to the jury were required, each precisely worded in the language of the respective statutes. *Frazier,* 81 Wn.2d at 635; *see also* RCW 9.95.015. In this case, the following interrogatories were used and the following answers received from the jury:

Special Verdict Form A:

> Was the defendant, GARY L. EKER, or an accomplice, *armed with* a deadly weapon at the time of the commission of the crime in Count I?[4]
> Answer: __No__ (Yes or No)

(Italics ours.)

Special Verdict Form B:

> Was the defendant, GARY L. EKER, or an accomplice, *armed with or in possession of* a firearm at the time of the commission of the crime in Count I?

---

[3]The following portions of the penalty enhancement statutes are pertinent to this appeal.

RCW 9.95.040 provides in pertinent part:

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but *armed with a deadly weapon at the time of the commission of his offense,* the duration of confinement shall not be fixed at less than five years.

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was *armed with a deadly weapon at the time of the commission of his offense,* the duration of confinement shall not be fixed at less than seven and one-half years." (Italics ours.)

RCW 9.41.025 provides in pertinent part:

"Any person who shall commit or attempt to commit any felony, including but not limited to . . . rape in the first degree, . . . *while armed with, or in the possession of any firearm,* shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided: . . ." (Italics ours.)

[4]Count I was the rape charge.

Answer: _Yes_ (Yes or No)

(Italics ours.)

In order to convict Eker of first degree rape under the trial court's instructions, the jury was required to find that he or an accomplice used or threatened to use a deadly weapon, and, if the latter, that Eker knew during the commission of the crime that a deadly weapon was used or threatened to be used.[5] The instructions defined "deadly weapon" and recited a list of examples from RCW 9.95.040, which included firearms. The terms "armed" and "in possession of" were not defined.

We confess at this point some difficulty in understanding what Eker is arguing. He seems to contend that the answers to the special verdict questions are inconsistent with each other because a firearm is a deadly weapon and the terms are synonymous in this case. He also seems to contend that the answer in Verdict Form A is inconsistent with any finding—whether in the general verdict or in Special Verdict Form B—that either he or an accomplice used or threatened to use a deadly weapon while committing the rape. He relies chiefly on _State v. Wedner,_ 24 Wn. App. 346, 601 P.2d 950 (1979), _review denied,_ 93 Wn.2d 1013 (1980). _Wedner_ held that, where an ambiguity is created by the instructions setting forth the elements of the crime, and the special verdict cannot be reconciled with the general verdict, the judgment is void. Eker seems to argue that, because the instruction concerning the special verdict forms did not define the terms "armed with" and "in possession of," an ambiguity arose, and this ambiguity, coupled with the allegedly inconsistent answers, compels reversal.[6] We disagree.

---

[5] We surmise that the instructions were based on _State v. Plakke,_ 31 Wn. App. 262, 639 P.2d 796 (1982). This is no longer the law. _State v. Davis,_ 101 Wn.2d 654, 682 P.2d 883 (1984).

[6] Eker did _not except to this instruction and does not challenge it here._

██ There was no ambiguity in the instructions setting forth the elements of the crime. First degree rape was clearly defined.[7] There was ample evidence to support a finding that Eker forcibly compelled Ms. M. to engage in sexual intercourse under an implied threat that a deadly weapon—the gun—would be used if she did not succumb. Ms. M. knew the gun was somewhere close by. The perpetrator of a crime need not be armed with a weapon in order to threaten to use one, if the victim knows that the weapon is available because it is in possession of the perpetrator or an accomplice. *See State v. Hauck*, 33 Wn. App. 75, 651 P.2d 1092 (1982) (discussion of meaning of "armed").

The special verdicts were used only to invoke the penalty enhancement statutes. The questions were necessarily couched precisely in the language of the controlling statutes. One was in the disjunctive (armed with or in possession of); the other used the single term "armed with." As a practical matter, this difference obviously suggested to the jury that the two questions contemplated different—and not necessarily overlapping—elements.

██ A special finding will not control a general verdict unless it is so irreconcilably inconsistent that it cannot

---

[7]Instruction 8 reads as follows:

"To convict the defendant of the crime of Rape in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about April 12, 1982, the defendant or an accomplice engaged in sexual intercourse with [Ms. M.];

"(2) That [Ms. M.] was not married to the defendant;

"(3) That the sexual intercourse was by forcible compulsion;

"(4) That the defendant or an accomplice used or threatened to use a deadly weapon and the defendant knew during the commission of the crime that a deadly weapon was used or threatened to be used;

"(5) That the acts occurred in Lewis County, Washington.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty."

otherwise be interpreted. *State v. Robinson,* 84 Wn.2d 42, 523 P.2d 1192 (1974). Where the general verdict and the special finding can be harmonized by considering the entire record of the case, including the evidence and the instructions, it is the duty of the court to harmonize them. *State v. Davis,* 35 Wn. App. 506, 667 P.2d 1117 (1983), *aff'd,* 101 Wn.2d 654, 682 P.2d 883 (1984). The answers to the special verdicts are not irreconcilably inconsistent when considered in light of these principles.

The jurors could certainly understand the meaning of the common terms "used or threatened to use a deadly weapon" in the first degree rape instruction. They also undoubtedly understood the meaning of "in possession of a firearm." Were these the only questions before us, the debate would be over, as the evidence supported positive answers to both. Shemalewski had threatened to use the gun. Eker led police investigators to it and admitted that it was his. Certainly the jury could infer that either Eker or Shemalewski was in possession of the weapon when the crime was committed.

The term "armed with," however, was used in conjunction with an instruction which recited a long list of deadly weapons, most of which had nothing to do with the crime as charged. The disjunctive wording of Verdict Form B must have led the jury to believe that "armed with" was somehow different from "possession." Confronted with this, the jury obviously did what a conscientious jury is expected to do: it concluded in answer to question A that the undefined element of being armed had not been proved, and answered the question no.

In short, we conclude that the answers to the special verdict forms are not inconsistent with each other or with the general verdict. The jury merely found that the elements of the crime and of one consistent special interrogatory were proved and that the elements of the other interrogatory were not proved.

Affirmed.

REED and PETRICH, JJ., concur.

Reconsideration denied May 3, 1985.

Review denied by Supreme Court June 21, 1985.